# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 8, 2008

## SHELBY COUNTY SHERIFF'S DEPARTMENT v. MICHAEL HARRIS

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-0951-3     Kenny W. Armstrong, Chancellor**

---

**No. W2008-00202-COA-R3-CV - Filed February 10, 2009**

---

Shelby County Sheriff's Deputy appealed the termination of his employment for violation of SOR-104–Personal Conduct to the Civil Service Merit Board. The Board modified the punishment to suspension without pay. The Sheriff's Department appealed the Board's modification to the Shelby County Chancery Court, which upheld the Board's decision. The Sheriff's Department appeals. We affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Martin Zummach, Germantown, TN, for Appellant, Shelby County Sheriff's Department

Linda Kendall Garner, Memphis, TN, for Appellee, Michael Harris

## OPINION

Since approximately 1987, Appellee Michael Harris has been employed by the Appellant Shelby County Sheriff's Department as a Deputy Sheriff. On February 21, 2005, Internal Affairs initiated an investigation of Mr. Harris.[1] The investigation originated from a complaint lodged by Ms. Belinda Johnson. According to the Report filed by the Internal Affairs Department, in her February 21, 2005, tape-recorded interview, Ms. Johnson alleged that:

> [S]he was sitting downstairs outside [the] General Sessions Court Room.... She stated that while sitting there Harris asked her, "What are you doing here?" She replied, "I am waiting on my lawyer." Johnson stated that Harris walked away, returned approximately (15) fifteen minutes later and asked her to follow him.

---

[1] The investigation was opened at the request of the Chief Deputy William Oldham.

She stated [that,] as she and Harris were walking, she saw her lawyer. Johnson stated that she walked over to her attorney and made the statement, "I don't know what this officer want[s] with me." She advised that her attorney answered back saying, "I don't know either." The question was asked, "Did your attorney see you walking with Harris?" She replied, "Yes, he did see me." Johnson stated that Harris led her to a locked office located in a little hallway beside Division (8) eight.... Johnson stated, "he sat down and I sat down. He asked me, what was my name? Wh[ere] was my other half[] at and I told him that he was locked up you know. He asked me, how long had he been locked up. I told him since November and I told him he would be getting out next month." She stated, "He proceeded to tell me he would like to be very discreet about things that he do [sic] and asked me could he see me outside the courts? And I stood up and told him I think I better go because...I might miss...court and he was telling me that the judge in Division 11, she's cool...she wasn't going to be bad on me and I told him I said well you can say that, I can't, I already missed a court date. So as I stood up he reached for my skirt to try to pull it up to ask me are there any more tattoos up under my skirt and I pushed his hand and walked out [of] the office. I went to my lawyer and told my lawyer what happened."

(Internal citations omitted).

The Report indicates that, in his tape-recorded statement, Ms. Johnson's attorney Mark Mesler confirmed that he had seen Officer Harris with his client, and that Ms. Johnson had asked him what Officer Harris wanted with her. Mr. Mesler further stated that Ms. Johnson later told him that Officer Harris had tried to pull up her skirt.

Officer Harris was interviewed by Internal Affairs on March 31, 2005. His relevant testimony was as follows:

[Officer Harris] stated that he first encountered Ms. Johnson when he went down stairs to locate the Spanish Interpreter.... He stated that he put the Spanish Interpreter on notice that they needed him in Division 11.... Harris stated that, "I came out [and saw] this lady with this short pink outfit...well she was acting jittery or whatever." He stated that he asked Johnson if she was ok, [to] which she replied, "Yes." He then asked her who was her attorney, she replied, "Mark Mesler." He advised that he called for Mark Mesler on his radio, [and] did not get a response from any officers in the other courtrooms that they had seen Mesler. Harris stated to Johnson, "Come walk with me." The question was asked, "Did she [tell] you

at anytime that she needed you or wanted your help? He replied, "No. This is something that I voluntarily took upon myself to do." He also stated that he called for Mesler on his cellular telephone but did not make contact with him. Once inside the office he stated he asked her [] for her name and what she was doing down here. He stated that he was just making conversation when she made the comment; she has a case over in Division 11. The question was asked, "Did you grab her hand or arm or anything?" He replied, "Now to say that I did not shake her hand or something to that affect, I can't remember. And I can't say no I did not do it. But if I did it was not in a sexual manner." The question was asked, "So you brought up the tattoo?" Harris replied, "Yes." The question was asked, "Did you put your hands on any part of her while she was in the office? He replied, "The entire time this lady was in my office, I did not put my hand on her, no." The question was asked, "Was it work related or personal?" Harris replied, "A combination of the two."

(Internal citations omitted).

Based upon the foregoing testimony, Officer Harris was charged with violating SOR 104–Personal Conduct, which provides:

The conduct of each employee, both on and off duty, is expected to be such that it will not reflect adversely on other employees, the SCSO, Shelby County, or the law enforcement profession. This regulation applies to both the professional and private conduct of all employees. It prohibits any and all conduct, which is contrary to the letter and spirit of SCSO policy, and procedure, which would reflect adversely upon the SCSO or its employees. It includes not only all unlawful acts by employees but also acts which, although not unlawful in themselves, would violate the Law Enforcement Code of Ethics, and would degrade or bring disrespect upon the employee or the SCSO.

Officer Harris was informed of the charges against him and a Loudermill hearing was held on June 16, 2005. By letter of June 22, 2005, Officer Harris was notified that he was found guilty of all charges, and that his employment with the Shelby County Sheriff's Department was being terminated effective June 27, 2005.

Officer Harris appealed the Department's decision to the Civil Service Merit Board. The Board heard the case on March 21, 2006. In its decision, the Board found, in relevant part:

It is the opinion of the Board, after review of the facts as presented by management and the Petitioner in the hearing, that there is evidence presented to find [Officer Harris] guilty of violating the policies and procedures as outlined in the charges. It is also the opinion of the Board that termination of [Officer Harris] was excessive.

\*                                    \*                                    \*

IT IS, THEREFORE, the decision of the Board to modify the termination to a suspension without pay from June 27, 2005 through December 8, 2005. [Officer Harris] will be returned to work immediately with back pay beginning December 9, 2005.

On May 15, 2006, the Shelby County Sheriff's Department filed a petition for writ of certiorari in the Shelby County Chancery Court, seeking review of the Board's decision to modify Officer Harris' punishment. The trial court entered an Order on January 8, 2008, finding that, "[a]fter argument of counsel and review of the entire record, the Court finds substantial and material evidence to support the decision of the [Board] and affirms said decision." The court explained its reason for the decision in its ruling from the bench, which was incorporated by reference into the Order. The relevant findings are as follows:

[F]rom my review of the record, I find that there was no specific delineated rule of the procedure that was violated by Officer Harris with respect to his conduct in escorting this female litigant from the room. The Board found such conduct, however, to be a violation of the Sheriff's Department policy of unbecoming personal conduct.

I further find that Officer Harris admitted he exercised bad judgment in a situation [] which ultimately allowed certain criminal charges against him and that such charges against an officer adversely affected the Sheriff's Department in the public domain.

Officer Harris has been acquitted of the criminal charges. Nonetheless, I find [] from all the evidence produced at the hearing that the Board–it would appear from the evidence that Officer Harris had violated the Department's personal conduct policy.

With respect to the Board's decision to modify the punishment, in fact, from termination to suspension, I find and conclude that modification by the Board was supported by substantial and material evidence in the record.

In light of the officer's 19 year record performance and because of the acquittal of all criminal charges that we mentioned, I'm going to affirm the modification by the [Board] from termination to suspension....

-4-

The Sheriff's Department appeals and raises one issue for review as stated in its brief:

> Whether the Chancery Court erred in failing to reverse the decision of the Shelby County Civil Service Merit Review Board when the Board found Mr. Harris guilty of the charge leveled against him, yet modified the Shelby County Sheriff's Department decision to terminate Mr. Harris.

The Civil Service Merit System was established for employees of Shelby County by Chapter 110, Private Acts 1971. The Act establishes a Civil Service Merit Board, Private Acts, ch. 110, § 3, 494 (1971), with the power and duty to hear employee appeals following removal, suspension or reduction in rank. Private Acts, ch. 110, § 6(d), 497 (1971). The Board has the power to affirm, modify or revoke an order of discipline appealed to it. Private Acts, ch. 110, § 23, 505-06 (1971). "The Board's power to modify the sanctions imposed is of necessity a power that must be exercised within the discretion of the Board and is a judgment call based upon the nature and severity of the employee's action." *Austin v. Shelby County Government, Register's Office*, 761 S.W.2d 298 (Tenn. Ct. App. 1988).

Tennessee Code Annotated Section 27-9-114 extends judicial review to civil service board proceedings that affect the employment status of civil servants. *See* Tenn.Code Ann. § 27-9-114 (Supp. 2006); *Tidwell v. City of Memphis*, 193 S.W.3d 555, 559 (Tenn.2006). This Code provision requires compliance with the judicial standards of review set out in the Uniform Administrative Procedures Act (UAPA), as codified at Tennessee Code Annotated Section 4-5-322. Tenn. Code Ann. § 27-9-114(b)(1). Under the UAPA, administrative agency decisions are subject to non-jury review in chancery court, with a scope limited to the administrative record. Tenn.Code Ann. § 4-5-322(g) ( Supp.2006) (providing, however, that review of procedural errors need not be limited to the administrative record). Subsection (h) specifies the scope of judicial review as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn.Code Ann. § 4-5-322(h) ( Supp. 2006).

Therefore, the decision of the Civil Service Merit Board may be reversed or modified only when "the Board has acted in violation of constitutional or statutory provisions or in excess of its own statutory authority; has followed unlawful procedure or been guilty of arbitrary or capricious action; or has acted without substantial and material evidence to support its decision." **Watts v. Civil Serv. Bd. for Columbia**, 606 S.W.2d 274, 277 (Tenn.1980); **Gross v. Gilless**, 26 S.W.3d 488, 492 (Tenn.Ct.App.1999). Tennessee Code Annotated Section 4-5-322(h)(5)(B), states that, "[i]n determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h)(5)(B) (2005). The statute does not define "substantial evidence," but Tennessee courts have generally defined the term as "something less than a preponderance of the evidence, but more than a scintilla or glimmer." **See, e.g., Wayne County v. Tennessee Solid Waste Disposal Control Bd.**, 756 S.W.2d 274, 280 (Tenn.Ct.App.1988). Stated differently, substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" **Southern Ry. Co. v. State Bd. of Equalization**, 682 S.W.2d 196, 199 (Tenn.1984) (quoting **Sweet v. State Tech. Institute at Memphis**, 617 S.W.2d 158, 161 (Tenn.Ct.App.1981)).

In this case, we have the Board exercising the power granted to it to modify the sanctions (i.e., termination of Officer Harris' employment) imposed by the Sheriff's Department. However, the fact that the Board exercised this discretion does not, necessarily, lead to a conclusion that it abused its discretion. The finding that Officer Harris' actions violated SOR-104 is not appealed. The question, therefore, is what punishment to impose, and to whom (as between the Sheriff's Department and the Board) that decision should fall. We concede that, in this case, there were myriad punishments that could have been imposed, with the most severe being termination of employment. Although the Sheriff's Department arrived at this punishment, the Board (in its discretion) reviewed the facts and determined that the less severe punishment of suspension without pay should apply. We cannot lose sight of the fact that the Board is vested with the authority to review departmental decisions, and we are unable to reverse the Board's decision absent a finding that the Board acted outside its own statutory authority, followed unlawful procedure, acted in an arbitrary or capricious manner, or acted without substantial and material evidence to support its decision. We find none of these violations in the actions of the Board in this case. The record contains no evidence from which to conclude that Officer Harris' actions in taking Ms. Johnson into his office violated any departmental policy. Furthermore, there were no witnesses (other than Officer Harris and Ms. Johnson) to what happened inside that room. Given Officer Harris' history with the Sheriff's Department, his nineteen year tenure, and the fact that he was ultimately acquitted of any criminal wrongdoing, we conclude that there is substantial and material evidence to support the

Board's decision to modify his punishment. From the totality of the circumstances, we cannot conclude that the Board acted outside its authority, or in an arbitrary or capricious manner.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Shelby County Sheriff's Department and its surety.

.

_____
J. STEVEN STAFFORD, J.