IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 17, 2012 Session

## TIKITA JONES
v.
## SHELBY COUNTY GOVERNMENT CIVIL SERVICE MERIT BOARD & SHELBY COUNTY DIVISION OF HEALTH SERVICES

Appeal from the Chancery Court of Shelby County
No. CH-11-0746-3   Kenny W. Armstrong, Chancellor

No. W2012-00191-COA-R3-CV - Filed November 14, 2012

This is an appeal from an administrative decision on the termination of the employment of a municipal employee. The appellant employee was fired from her job with the appellee municipal health department for accessing patient medical records without authorization. The appellee civil service merit board of the municipality conducted an administrative hearing and upheld the termination of her employment. The employee filed a lawsuit in chancery court seeking judicial review of this decision. The trial court affirmed the decision of the civil service merit board and upheld the termination. The employee now appeals this decision, arguing that her due process rights were violated and that the decision of the civil service merit board was not supported by substantial and material evidence. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

James E. King, Jr., and P. Craig Grinstead, Memphis, Tennessee, for the Petitioner/Appellant Tikita Jones

Martin W. Zummach, Germantown, Tennessee, for the Respondent/Appellees Shelby County Government Civil Service Merit Board and Shelby County Division of Health Services

# OPINION

## FACTS AND PROCEEDINGS BELOW

This appeal involves the termination of the employment of a long-term municipal employee for accessing the patient medical records of her adult daughter without authorization. In 1987, Petitioner/Appellant Tikita Jones ("Jones") began working as an employee of the government of Shelby County, Tennessee. In 1993, Jones was promoted to the level of Clerical Specialist A and transferred to the Respondent/Appellee Shelby County Division of Health Services ("the Health Department"). At the Health Department, Jones worked in a health clinic as a clerical specialist. Her duties included making appointments for patients, providing general information to clients, and compiling and assembling information. Jones was authorized to access certain information in the medical records of patients of the Shelby County health clinic, for the limited purpose of performing these job duties.

In September 2009, Jones' adult daughter ("Daughter"), then 19 years old, became a patient of the clinic where Jones worked. Daughter was diagnosed and treated for a socially sensitive medical condition, not otherwise specified in the appellate record. In the months that followed Daughter's admission as a patient of the clinic, Jones accessed Daughter's medical records several times.

Approximately a year later, one of Jones' co-workers filed a complaint against the Health Department, unrelated to this case. The witnesses named in the co-worker's complaint included Jones, as well as other co-workers. Triggered by the co-worker's complaint, in September 2010, the Health Department initiated an investigation regarding Jones. In the course of the investigation, Jones was apparently asked to give an explanation for her actions in accessing Daughter's medical record. In response, on September 16, 2010, Jones wrote a letter to the Health Department's human resource manager, stating: "You requested for me to give you an explanation as to why I went into my daughter's medical records on 12/7/2009 and 3/10/2010. It was because it was initiated, requested and authorized by my daughter . . . ."

As a result of the investigation, the Health Department filed charges against Jones for accessing a family member's medical records without a work-related reason for doing so. On September 20, 2010, a letter was hand-delivered to Jones, informing her of allegations that she violated the Health Department's confidentiality agreement, violated HIPAA,[1] and

---

[1] The Health Insurance Portability and Accountability Act ("HIPAA") creates national standards for privacy and security of patient information and defines certain patient rights such as the patient's right to access his/her medical record information.

"intentionally failed to carry out instructions." The letter described the conduct that was the subject of the charges and informed Jones that the potential discipline included termination of her employment:

> [O]n December 7, 2009 and March 10, 2010, you did electronically access the medical record of patient #0007248381. It has also been determined that this patient was your family member, and you had no work-related reason to view the medical information for patient #0007248381 (see Attachments).
>
> * * *
>
> In view of the seriousness of these allegations as listed and supported above and in consideration of the major discipline you received in February 2006, disciplinary action, up to and including termination, may be taken against you.

Attachments to this letter showed that Jones accessed Daughter's patient account on four separate occasions. Specifically, on December 7, 2009, Jones accessed 14 screens in Daughter's medical record from 11:09:30 a.m. to 11:10:59 a.m., and on that same day she accessed two more screens in Daughter's record from 11:35:16 a.m. to 11:36:37 a.m. On January 11, 2010, Jones accessed six screens in Daughter's medical record, two of which were lab reports, and had the account open for over a minute. Finally, on March 10, 2010, Jones accessed 16 additional screens in Daughter's medical record, six of which were related to lab reports, for approximately two minutes. The letter informed Jones of a *Loudermill* hearing,[2] scheduled a week later on September 27, 2010, to allow her to present reasons why she should not be disciplined for these actions.

The *Loudermill* hearing was conducted a week later as scheduled. At the hearing, Jones represented herself.[3] She acknowledged that she had been trained on the requirements of HIPAA and the Health Department's guidelines on confidentiality. Jones conceded that she had accessed Daughter's medical records, but she presented an e-mail from Daughter, dated three days before the hearing, indicating that Daughter had authorized Jones to access Daughter's records. The record indicates that Jones acknowledged at the hearing that she understood the requirements for a proper authorization form and the requirements for

---

[2]"The term 'Loudermill hearing' derives from the United States Supreme Court decision *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487 (1985)." *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 260 n.11 (Tenn. 2009). "The *Loudermill* Court held that a public employee who can be discharged only for cause must be given notice and an opportunity to respond to the charges against him prior to termination." *Davis*, 278 S.W.3d at 260 n.11 (citing *Loudermill*, 470 U.S. at 546).

[3]The appellate record does not include a transcript of the *Loudermill* hearing.

notation of the release of such information in a disclosure log, and that she had complied with neither requirement.[4]

After the *Loudermill* hearing, on September 30, 2010, the Health Department director hand-delivered a letter to Jones with her findings and her determination on the charges. The letter indicated that the director had determined that, although Jones had received training as to HIPAA and the Health Department confidentiality requirements and procedures, she had nevertheless "knowingly accessed protected health information for a patient in our clinic - who happened to be your family member." The director noted that there was no signed authorization form and no notation in the disclosure log, so "the process for release of medical information was not followed." As to the email from Daughter indicating that Daughter had authorized Jones to access her medical records, the Department director noted that the email was dated well after Jones accessed Daughter's information, and said that she could not conclusively determine that the email was actually from Daughter. The letter concluded by informing Jones that her employment with the Health Department was immediately terminated.[5]

Jones appealed her termination to the Respondent/Appellee Shelby County Civil Service Merit Board ("Board"). The Board conducted an evidentiary hearing on the matter on February 8, 2011. Jones retained counsel for this proceeding and the Board heard testimony from five witnesses.

Jones testified at the Board hearing. Consistent with the findings from her *Loudermill* hearing, Jones testified that she had undergone extensive training and was familiar with the HIPAA standards that were applicable to her job. Jones explained that it was her understanding that if a patient called into the office and requested information from the patient's own medical record and the caller could give identifying information such as a date of birth, social security number, or the like, then she was permitted to give them certain information. In contrast, if the patient presented in-person at the clinic and requested information or medical records, then Jones understood that an authorization form must be signed and that Jones was required to fill out a disclosure log. Asked about a policy that

---

[4]Jones later asserted that, at the *Loudermill* hearing, she was not asked to explain the policies that were applicable where a patient asked for information over the phone, as opposed to an in-person request at the clinic.

[5]The letter stated in part: "Because you have been employed by the County for 22 years, I attempted to allow your years of service to mitigate my decision. . . ." The director said that the only positions to which she could have transferred Jones also had job responsibilities that included "protecting confidential information." She also noted that Jones had had a "major disciplinary action" in 2006. In light of these facts, the Health Department director decided to terminate Jones' employment.

required calls from family members to be handed off to another employee, Jones claimed she was unaware of it. Jones acknowledged that if she had in fact accessed a family member's medical records without permission, it would be a violation of HIPAA and a serious breach of patient privacy.

Jones conceded that she accessed Daughter's medical records, but asserted that, in each instance, she had received prior authorization from Daughter to do so. On December 7, 2009, Jones said, Daughter called her at work and wanted to make an appointment at the clinic because the medicine she was prescribed was not working. On that occasion, Jones testified, she told Daughter to wait and to give the medication a chance to work, so no appointment was made for Daughter. Asked about the fact that, on that occasion, she had accessed Daughter's account in several areas unrelated to appointments, Jones emphasized that she was not trying "to check anything out or to do anything because . . . [Daughter] had already given [her] the information [about her condition] . . . I was the one who encouraged her to come because of this outreach that the Health Department was having." Jones explained that she had accessed multiple screens in Daughter's records because Daughter wanted to know which of her prescribed medications was causing a negative reaction, to gather information for Daughter's private physician if she decided to go there instead.

On January 11, 2010, Jones testified, she accessed Daughter's medical records while Daughter was on the phone with her. Jones said that she accessed Daughter's lab reports and appointment history at that time as well. Finally, on March 10, 2010, Jones explained that she accessed Daughter's records because Daughter had called and again wanted to make an appointment. However, no appointment was made because Daughter decided to see her private physician instead. Jones confirmed that she went into additional screens in Daughter's records, including accessing Daughter's lab report four times, but again insisted that she was "not just checking for whatever it was that she had because I had already been informed . . . I already knew." Jones claimed that she had accessed multiple screens for confirmation of the dates on which Daughter was in the clinic because Daughter had asked her for those dates.

Daughter testified at the hearing on Jones' behalf. Daughter confirmed that she was a patient at the clinic and that she had received treatment there twice. Daughter also confirmed that she called her mother at the clinic in December 2009 and January 2010, first to ascertain when to expect her medicine to start working and again to find out the next time she needed to come in to the clinic. Daughter said she was uncertain of the exact dates. Daughter testified that she made only those two calls and did not call her mother at the clinic in March, April, or May 2010.

The Director of the Health Department, Yvonne Madlock ("Madlock") testified on behalf of the Department. Madlock chaired the *Loudermill* hearing conducted for Jones. Madlock said that Jones' testimony at the *Loudermill* hearing was essentially the same as the testimony the Board had just received from Jones, except that Jones did not say at the *Loudermill* hearing that Daughter had inquired about her medication. Madlock said that the email purportedly written by Daughter, stating that she had given Jones permission to access her medical record, was presented in the *Loudermill* hearing, but that was not sufficient to convince Madlock that Jones "actually had the authority of the daughter to go into that medical record."[6] Madlock responded to Jones' explanation of her reasons for accessing various screens within Daughter's medical records. She said that the interpretation of lab reports, medical records, medication reports, side effects, and the like would be "far beyond the scope of responsibility of a Clerical Specialist A." Madlock stated that, at the *Loudermill* hearing, she concluded that Jones purposely entered Daughter's medical records for her own discovery purposes. In Madlock's view, Jones did not give any explanation that supported a valid reason for her actions. Madlock noted that Jones was not authorized to give Daughter medical advice or medical information and "did not have a work-related reason to access elements of her daughter's medical records that clearly the evidence indicated she perused." After hearing Jones' explanation for her actions, Madlock concluded that Jones had simply "surfed" around in Daughter's medical records for Jones' own personal reasons. Madlock emphasized the importance of respecting patients' privacy and testified that, if Jones were to return to the Health Department in any capacity, she would have a "very, very difficult" time trusting that Jones would follow either HIPAA or the Health Department's policies.

The Board heard testimony from a Health Department employee who had worked for several years as lead Clerical Specialist A, along with Jones. She explained the policies applicable to clerical specialists. In order to make an appointment for a patient, she said, some of the patient's information must be accessed, such as verifying the patient's date of birth, but she maintained that there was no reason for a clerical specialist to look at lab reports or blood tests, or for a clerical specialist to tell a patient about the medication they had been prescribed.

The Health Department's human resource manager testified about the Department's investigation of Jones' actions. She said that the Department's investigation was centered on the fact that "[t]here was no reason for [Jones] to access that medical record." She emphasized that Jones was not terminated for the failure to get an authorization form or fill out a disclosure log; rather, her employment was terminated "because Ms. Jones violated

_____

[6]Madlock mentioned a letter written by Daughter, dated December 5, 2011, over a year after the incidents in question, that was supposedly provided by Jones at the Board hearing. The appellate record does not include the December 5, 2011 letter.

-6-

HIPAA by accessing a medical record that she had no reason to go into." This concluded the testimony presented to the Board.

The Board issued its decision on March 1, 2011, upholding the termination of Jones' employment. The Board stated that its decision was "based on the fact that [Jones] violated the HIPAA policy and failed to follow the Guidelines of the Release of Medical Records." It found: "Ms. Jones admitted to accessing her daughter's medical record . . . . No information was presented to mitigate the charges against Ms. Jones."[7] Thus, the Board determined that the Health Department "met the burden of proof for cause in the termination of [Jones]."

In due course, Jones filed a petition in the Chancery Court of Shelby County, Tennessee, seeking judicial review of the Board's decision to uphold the termination of her employment. A hearing was held in October 2011, at which, the trial court heard argument from counsel.[8] After noting its limited standard of review, the trial court issued an oral ruling from the bench, affirming the Board's decision and upholding the termination of Jones' employment. The trial court's subsequent written order incorporated verbatim its oral findings of fact and conclusions of law:

> Ms. Jones violated the Health Department Guidelines of accessing the patient information, the records, including that of her daughter. I further find that her actions were in violation of the HIPAA Act Guidelines for accessing confidential patient information, including information of her daughter. . . . I further find that the authorization given later by the daughter was insufficient to cure the HIPAA violations committed by Ms. Jones. It is further my finding that the screen access by Ms. Jones [was] not necessary to view in order to make an appointment for the daughter if, in fact, the daughter called to have an appointment made by the mother. And for all those reasons, I think there is sufficient evidence in the record to support the termination by the [Board], and I will deny the relief.

---

[7]The Board also noted that the email from Daughter indicating that Jones had been authorized to access her medical record was dated three days prior to Jones' ***Loudermill*** hearing. The Board did not further explain how it viewed the email.

[8]During this hearing, counsel for Jones raised for the first time an issue concerning a violation of Jones' constitutional rights. Counsel for Ms. Jones contended that her employment could not be terminated because she was a witness testifying in an EEOC matter and was thus the subject of improper retaliation. The trial court determined that "any argument regarding the Equal Protection Clause was waived; that that argument was never raised, and assuming you can raise it now, I find that there is insufficient proof in the record to support any such claim." This decision by the trial court was not appealed.

Thus, on November 29, 2011, the trial court entered a written order affirming the decision of the Board. The trial court found that "there was substantial and material evidence contained in the record supporting their decision to uphold the termination of Tikita Jones." Jones now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

Jones raises three issues on appeal:

> 1) Whether [Jones] received notice of the charges against her adequate to protect her due process rights[;]
>
> 2) Whether there was substantial and material evidence to support the Civil Service Board's and Chancery Court's determination to affirm the Shelby County Health Department['s] decision to terminate [Jones], despite no evidence that she violated the Health Insurance Portability and Accountability Act (HIPAA) nor did she violate Agency policy; [and]
>
> 3) Whether the Chancery Court erred in affirming the Board upholding the Agency decision to terminate [Jones] by not finding that the Agency's decision was [a]rbitrary or capricious in light of the fact that the Board factored in new allegations and evidence regarding the basis for terminating [Jones].

On appeal, we review the decision of the Shelby County Civil Service Merit Board using the same standard as that used by the trial court, namely, the standard set forth in Tennessee Code Annotated § 4-5-322, known as the Uniform Administrative Procedures Act. *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 262, 264 (Tenn. 2009). Tennessee Code Annotated § 4-5-322(h) provides:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h)(2012). As noted above, the issues raised by Jones on appeal fall under subsections (h)(4) and (h)(5) of the above statute.

When the factual support for an administrative decision is challenged, we examine the entire record to determine whether the decision is "arbitrary or capricious" or is not supported by "substantial and material evidence." Tenn. Code Ann. § 4-5-322(h)(4) & (5); *Miller v. Tenn. Bd. of Nursing*, 256 S.W.3d 225, 229 (Tenn. Ct. App. 2007); *Cope v. Tenn. Civ. Serv. Comm'n*, No. M2008-01229-COA-R3-CV, 2009 WL 1635140, at *3; 2009 Tenn. App. LEXIS 378, at *8 (Tenn. Ct. App. June 10, 2009).

An arbitrary or capricious decision is one that is not "based on any course of reasoning or exercise of judgment or . . . [one which] disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *City of Memphis v. Civil Serv. Comm'n,,* 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)). "Substantial and material evidence" has been described as "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne Co. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988); *Shelby Co. Sheriff's Dep't v. Harris*, 337 S.W.3d 840, 844 (Tenn. Ct. App. 2009). The appellate court must review the record to determine whether the evidence in the record furnishes a reasonably sound factual basis for the Board's decision. *City of Memphis*, 216 S.W.3d at 316-17 (quoting *Jackson Mobilphone Co.*, 876 S.W.2d at 110-11).

### ANALYSIS

### Due Process

On appeal, Jones argues that she was deprived of her constitutional right to due process because the Health Department changed the specific reasons given for the termination of her employment after she filed her appeal to the Civil Service Merit Board. Jones claims: "at no time prior to or during the pre-termination [*Loudermill*] hearing, was Ms. Jones put on notice of charges against her regarding reviewing unauthorized and unnecessary computer screens

containing [Daughter's] medical records." Jones contends that, at the ***Loudermill*** hearing, the Health Department built the case against Jones on specific violations of Health Department procedures regarding authorization forms and notations in the disclosure log. Then after she appealed to the Civil Service Merit Board, the Health Department added other grounds, namely, allegations of inappropriate access to various medical computer screens and acceptance of a phone call from a relative. Thus, Jones argues that these additional allegations "posed an unfair surprise as Ms. Jones had no opportunity to call potential witnesses and investigate the allegations and evidence."

Due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties" of the claims of the opposing parties and that the purpose is to "notify the individual in advance in order to allow adequate preparation and reduce surprise." ***Gluck v. Civil Serv. Comm'n***, 15 S.W.3d 486, 491 (Tenn. Ct. App. 1999) (citing ***Memphis Light, Gas & Water Div. v. Craft***, 436 U.S. 1, 14; 98 S. Ct. 1554, 1562-63 (1978); ***Mullane v. Central Hanover Bank & Trust Co.***, 339 U.S. 306, 314; 70 S. Ct. 652, 657 (1950)). In this type of case, to determine whether due process has been satisfied, we review the procedures in the pre-termination ***Loudermill*** hearing and the post-termination Board hearing together, as they are intertwined. ***Case v. Shelby County Civ. Serv. Merit Bd.***, 98 S.W.3d 167, 173 (Tenn. Ct. App. 2002) (citing ***Carter v. Western Reserve Psychiatric Habilitation Ctr.***, 767 F.2d 270, 273 (6th Cir. 1985)).

We must respectfully reject Jones' due process argument. The September 20, 2010 letter to Jones, notifying her of the charges against her, focused on her unauthorized access of Daughter's medical records and stated that there was "no work-related reason to view the medical information." The attachments to the letter detailed the specific screens accessed by Jones, complete with the date and time of each access. The post-***Loudermill*** letter from the Health Department director notifying Jones that her employment was being terminated lists the basis for the termination as "Intentional Failure to Follow Instructions" and "Willful Disregard of Lawful Orders (HIPAA)," and explains that the director found that Jones committed these offenses "when you knowingly accessed protected health information for a patient in our clinic - who happened to be your family member." Clearly, Jones had sufficient notice to allow for adequate preparation for the proceedings before the Civil Service Merit Board, and any failure by Jones to rebut the charges at the Board hearing was not due to her "surprise" at the charges. This argument is without merit.

### Substantial and Material Evidence/Arbitrary and Capricious

We consider together Jones' arguments that the Board's decision to uphold the termination of her employment was "arbitrary or capricious" and "unsupported by evidence that is both substantial and material in light of the entire record." Tenn. Code Ann. § 4-5-322 (h)(4) and

(5)(A). Jones appears to argue that the Board's decision is not supported by substantial and material evidence, and therefore, is arbitrary or capricious. A decision that is not supported by substantial and material evidence is necessarily arbitrary and capricious. *Mitchell v. Madison County Sheriff's Dept.,* 325 S.W.3d 603, 618 (Tenn. Ct. App. 2010) (citing *Miller v. Civil Serv. Comm'n*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008)). We consider, then whether the Board's decision was supported by substantial and material evidence, and whether it was arbitrary or capricious.

Jones argues first that the ground of "Intentional Failure to Follow Directions" was not established because the Health Department's protocol for a patient who calls into the clinic for information about the patient's medical record did not require a signed authorization form or a notation by Jones on the Department's disclosure log, in contrast to the protocol for a patient who physically presents in the clinic. Jones notes that both she and Daughter testified that Daughter called Jones at the clinic, and Jones accessed Daughter's record pursuant to Daughter's telephone requests. Jones contends that the grounds for her termination did not include failure to follow the Department's instructions on how to handle a call-in patient's request for information.

Jones also argues that the ground of "Willful Disregard of Lawful Orders (HIPAA)" was likewise not established. She contends that her act of providing information over the telephone to the patient was in compliance with HIPAA law and agency guidelines, and emphasizes that the information from Daughter's medical record was given "only to the patient." Jones contends there was no HIPAA violation because accessing her daughter's medical records "falls within her job description and she was given the authority by her daughter to access [the] same." She also contends that the "Minimum Necessary Standard," which limits an employee's access to medical records to only the type of information that is needed to perform the employee's job duties, would not apply to Jones' disclosures to the patient in this case. Jones insists that there is no evidence in the record supporting the allegation that Jones accessed Daughter's medical records for her own personal reasons.

On appeal, we are not permitted to reverse an administrative decision that is supported by substantial and material evidence "solely because the evidence could also support another result." *Mitchell,* 325 S.W.3d at 619 (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001) and *Metro. Gov't v. Tenn. Solid Waste Disposal Control Bd.*, 832 S.W.2d 559, 561 (Tenn. Ct. App.1991)). The Board's factual findings may be rejected "only if a reasonable person would necessarily draw a different conclusion from the record." *Mitchell*, 325 S.W.3d at 619 (citing *Jones v. Greene*, 946 S.W.2d 817, 828 (Tenn. Ct. App. 1996)). Moreover, when an agency such as the Board conducts a hearing and evaluates the witnesses as they testify, this Court must give the agency's credibility determinations great weight.

*Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at \*7; 2005 Tenn. App. LEXIS 524, at \*19-20 (Tenn. Ct. App. Aug. 24, 2005).

Respectfully, Jones' argument for the most part sidesteps the main reason for the termination of her employment. Jones was not disciplined for disclosing to Daughter information contained in Daughter's own medical record; rather, Jones' transgression was accessing information in Daughter's medical record *for herself.*

We note that the Board was not required to credit either Jones' explanation of why she accessed Daughter's medical record or Daughter's after-the-fact assertion that she gave her mother permission to access her records. However, even if the testimony of both Jones and Daughter is credited, the record still contains ample support for the Board's decision. The documentary evidence in the record shows that Jones accessed multiple screens within Daughter's medical record that had nothing to do with facilitating Daughter's purported requests for appointments or even her supposed questions about specific dates of treatment. Jones does not dispute the accuracy of the documentary evidence as to the particular screens she accessed within Daughter's medical records on the specified dates. Jones' lengthy explanations for how she came to access Daughter's medical records included no work-related reason for her to have accessed sensitive treatment records such as Daughter's lab reports. The Health Department witnesses established clearly that accessing this type of information was not in the job description for a clerical specialist such as Jones, even if Daughter in fact gave her permission to do so.

Moreover, as to HIPAA, Jones herself admitted that if an employee were to peruse the medical record of a patient who happened to be a family member, or for that matter the record of any patient, without permission to do so, this clearly would be a HIPAA violation. In this case, although Jones claimed that she had Daughter's telephone permission to access Daughter's medical records on all four occasions in December 2009, January 2010, and March 2010, Daughter testified that she called the clinic only in December 2009 and January 2010, and did not call in March 2010 for any reason. Rather, Daughter clearly testified that she only called in December 2009 and January 2010. Therefore, the only evidence in the record on Jones' permission in March 2010 to access to Daughter's records was Jones' own assertion, which contradicted the testimony of her own daughter.

In her testimony before the Board, Jones repeatedly protested that, in accessing Daughter's medical records, she was not trying "to check anything out. . . ." From our review of the record, the evidence leaves us little choice but to conclude that Jones was doing just that, perusing Daughter's medical records in order to gain information for herself about her daughter's medical condition. The evidence clearly establishes, and Jones admits, that this would be impermissible and cause for discipline.

-12-

We acknowledge that termination of the employment of a 20-plus year employee is harsh discipline indeed. This was conceded by Madlock in her termination letter to Jones, in which Madlock stated that she tried without success to look for alternatives to termination, such as transfer. The trial court stated that it had sympathy for Jones, but could not "decide . . . based on sympathy," in light of the limited standard of review. We agree. Neither this Court nor the trial court is authorized to second-guess the discipline meted out, provided there is substantial and material evidence to support the factual finding that the underlying offense occurred. *See City of Memphis v. Morris,* No. W2011-02519-COA-R3-CV, 2012 WL 4040693, at *10-11; 2012 Tenn. App. LEXIS 639, at *30-32 (Tenn. Ct. App. Sept. 14, 2012) (citing cases).

From our careful review of the record, we find substantial and material evidence to support the Board's decision. Under all of the circumstances in this case, we cannot conclude that the Board's decision was either arbitrary or capricious. Therefore, the termination of Jones' employment must stand.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed to Petitioner/Appellant Tikita Jones, and her surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

-13-